IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER W. (BRUCE) THE LIVING MAN, and ELIZABETH (BRUCE), THE LIVING WOMAN,<br><br>        Plaintiffs,<br><br>v.<br><br>POLK COUNTY ATTORNEY'S OFFICE; JOHN P. SARCONE; JESSE RAMIREZ; STEPHANIE BROWN; KEVIN J. BROWNELL; KEVIN BELL; IOWA DEPARTMENT OF HUMAN SERVICES; KATIE GOSCH; STEPHANIE RHINEHART; EMILY NIEMAN; DES MOINES POLICE DEPARTMENT; JAKE LANCASTER; ALTOONA POLICE DEPARTMENT; CITY OF CARROLL POLICE DEPARTMENT; GREG BELLINGHAUSEN; IOWA STATE ATTORNEY GENERAL'S OFFICE; GRANT DUGDALE; KATHERINE MILLER-TODD[1]; CHILDREN & FAMILIES OF IOWA; ASHLEY ANDREWS; WILLIAM A. PRICE; WILLIAM KELLY; ROBERT BLINK; CAROL S. EGLY; JEANIE VAUDT; ANASTASIA HURN; LINDA LANE; DALE MAYS; PAUL WHITE; BETH WALKER; ANTHONY REED; and LUCAS TAYLOR,<br><br>        Defendants. | **No. 4:18-cv-00040-RGE-CFB**<br><br><br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS; GRANTING MOTIONS TO DISMISS BY SARCONE, MAYS, BELLINGHAUSEN, CRONBAUGH, CHILDREN & FAMILIES OF IOWA, LANCASTER, and TAYLOR; GRANTING REED'S MOTION FOR SUMMARY JUDGMENT; DENYING MISCELLANEOUS MOTIONS BY PLAINTIFFS; DENYING PLAINTIFFS' FOR DEFAULT JUDGMENT AND DISMISSING CLAIMS AGAINST WALKER** |

## I.    INTRODUCTION

Plaintiffs Christopher Bruce and Elizabeth Bruce bring this pro se complaint against

multiple defendants. Plaintiffs allege various violations of constitutional rights under

---

[1] Although listed in the caption, Defendant Katherine Miller-Todd does not appear to be referenced in the complaint. *See generally* ECF No. 5; *see also* Gosch, Rhinehart, Nieman, Dugdale, & Miller-Todd's Br. Mot. Dismiss 9, ECF No. 7-1.

42 U.S.C. § 1983, and also violations of 18 U.S.C. § 1961 (Civil Racketeer Influenced and Corrupt Organizations Act), and 18 U.S.C. § 241 (conspiracy). Am. Compl. 2, ECF No. 5.

## II.    SUMMARY OF RELEVANT FACTS

On July 21, 2014, Defendant Emily Nieman, an employee of Defendant Iowa Department of Human Services, arranged to remove T.B. from the custody of Christopher Bruce and Elizabeth Bruce. ECF No. 5 ¶¶ 1–2. Plaintiffs allege Nieman accomplished this by falsifying court and government documents and information, and subjecting Elizabeth Bruce to undue coercion and duress. *Id.* ¶ 2.

During the removal process, Defendant Judge William Price appointed Defendant Dale Mays as counsel for Elizabeth Bruce. *Id.* ¶ 3. Defendant Paul White was appointed to be guardian ad litem for T.B. *Id.* Defendant Katie Gosch was assigned as a caseworker to Plaintiffs. *Id.* Defendant Ashley Cronbaugh,[2] of Defendant Children & Families of Iowa, was the visit supervisor. *Id.*

A Child in Need of Assistance petition was filed July 22, 2014, by Defendant Stephanie Brown, an attorney with Defendant Polk County Attorney's Office.[3] *Id.* ¶ 7. Plaintiffs allege there were irregularities in the petition. *Id.* A removal hearing was held on July 29, 2014, presided over by Judge Price. *Id.* ¶4.

The termination hearing was held September 12, 2014. *Id.* ¶ 11. On September 21, 2014, Mays required Elizabeth Bruce to complete and submit an updated financial affidavit. *Id.* ¶ 10. Plaintiffs state this was a way to make them have to pay for documents filed in the case. *Id.*

---

[2] In her motion to dismiss, Defendant Ashley Cronbaugh states she was formerly known as Ashley Andrew not Andrews, and she is now Ashley Cronbaugh. Children & Families of Iowa & Cronbaugh Mot. Dismiss 1, ECF No. 25.
[3] Defendant Kevin Brownell succeeded Brown in prosecuting the Child in Need of Assistance proceedings. ECF No. 5 ¶ 12.

After the adjudication, Christopher Bruce posted an article on his online blog about the hearing. *Id.* ¶ 14. He states he was then "locked out and denied access to any document filed by the prosecution in the case, due to [Christopher Bruce] being 'a security risk.'" *Id.* Full access to the docket was restored two months later. *Id.*

Plaintiffs allege Cronbaugh lied at the hearing against them. *Id.* ¶ 21. On September 12, 2014, Christopher Bruce contacted Cronbaugh by text and demanded she remove herself as the visit supervisor. *Id.* ¶15. Christopher Bruce was warned not to contact Cronbaugh by text or phone. *Id.* On September 24, 2014, Defendant Stephanie Rhinehart informed Christopher Bruce in a telephone message he would not be allowed to visit T.B. unless he stopped writing about the termination proceedings in his blog. *Id.* ¶ 16. Christopher Bruce did not agree and "told Defendant Rhinehart that she could go to Hell." *Id.* On September 30, 2014, a detective from Defendant Des Moines Police Department called Christopher Bruce to investigate possible harassment charges based on these events. *Id.* ¶ 17. No charges were filed. *Id.*

Plaintiffs allege the parental termination proceedings were fraught with error and based on false information. *Id.* ¶¶ 18–40. Specifically, Plaintiffs allege Defendant Anthony Reed conducted fraudulent drug tests for the Department of Human Services. *Id.* ¶¶ 25–28; 31–32. Plaintiffs allege Judge Price and Defendant Katherine Beth Walker, the attorney who represented T.B.'s biological father, worked together to keep Christopher Bruce from having parental rights over T.B. *Id.* ¶¶ 37–40.

On February 20, 2015, Rhinehart, Gosch, and Nieman reported Christopher Bruce to the Des Moines Police Department, and Defendant Jake Lancaster investigated the report. *Id.* ¶ 41. Plaintiffs allege Lancaster called Christopher Bruce "incessantly," and eventually obtained a warrant against Christopher Bruce for harassment. *Id.* Based on Lancaster's investigation, a misdemeanor charge of First Degree Harassment was filed against Christopher Bruce by

Defendant Assistant Polk County Attorney Kevin Bell. *See State v. Bruce*, AGCR 283733, (Iowa Dist. Ct. Polk Cty. Feb. 20, 2015).[4] The state dismissed this harassment charge after Christopher Bruce pleaded guilty to third degree harassment charges in a related matter. Dismissal, *id.* (April 15, 2015).

On February 28, 2015, Plaintiffs' parental rights were terminated. ECF No. 5 ¶ 43. Plaintiffs allege the Department of Human Services never intended to reunite T.B. with them, but that "ALL, that had been involved thus far, and even [T.B.'s biological father's] attorney, conspired with Judge Price, the DHS, and all at the county attorney's offices to make sure T.B. went somewhere, ANYWHERE . . . and to ANYONE, as long as no one gave her back to the long married and loving parents who wanted her to begin with and still do, and who had fought against this, to have her returned, quite literally against all odds, for 6 long, traumatic months." *Id.* ¶ 44 (punctuation original).

Plaintiffs appealed the parental termination decision, and a hearing on this matter was held July 5–6, 2015. *Id.* ¶ 48. Defendant Grant Dugdale, from Defendant Iowa Attorney General's Office, represented Nieman. *Id.* Plaintiffs allege Reed gave false testimony at the hearing, and claimed not to know any of the Department of Human Services employees. *Id.* Plaintiffs allege Reed, Gosch, and Rhinehart "planned this well ahead of time." *Id.*

Plaintiffs allege the transcript of the termination hearing is "a complete fabrication," because White, T.B.'s guardian ad litem, never spoke at the hearing but three pages of the transcript reflect his testimony. *Id.* at 49.

---

[4] The Court takes judicial notice of the public records related to Christopher Bruce's state court cases. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (addressing federal court's ability to take judicial notice of public records).

Plaintiffs appealed the decision of the district court to the Iowa Court of Appeals. *Id.* ¶ 50. Plaintiffs allege unfairness and irregularities in the appellate proceedings as well, referring to "all the atrocious behaviors and actions of all who were involved in unison against us and our claimed inalienable rights as parents, involved against us, in order to, initially anyway, claim that we were unacceptable parents and people in every imaginable way, in order to seem justified in later terminating our rights, . . ." *Id.* ¶51. The Iowa Court of Appeals held Christopher Bruce had no parental rights with respect to T.B. *In re T.B.*, No. 15-0559, 2016 WL 3269581, at *1 (Iowa Ct. App. June 15, 2016). The Iowa Court of Appeals also affirmed the termination of Elizabeth Bruce's parental rights. *Id.* at *6.

While Plaintiffs waited for the Court of Appeals to decide the appeal, Christopher Bruce "continuously" sent "emails containing relevant news and clippings, recordings of legal atrocities, paperwork and proof of what was happening to [the claimants'] family, as well as things that were happening to other families all over Iowa, to Darren Tromblay, the [then] Editor-in-Chief at CityView magazine in Des Moines, Iowa." *Id.* ¶ 53. Initially, Tromblay responded to Christopher Bruce about the possibility of a story but stated he needed to do more investigation. *Id.* Tromblay emailed Christopher Bruce of his intention to send reporter Jeffrey Pitts to investigate the story. *Id.* After not hearing anything more from Tromblay, Christopher Bruce emailed Tromblay again asking "somewhat angrily, what the big delay was" and why he had not heard from him. *Id.* Based on these events, Bruce was charged with third degree harassment of Tromblay. *State v. Bruce*, SMAC 359086 (Iowa Dist. Ct. Polk Cty. Jan. 13, 2016).

On January 23, 2016, officers from Defendant Carroll Police Department, including Defendant Officer Gary Bellinghausen,[5] went to arrest Christopher Bruce on the Tromblay

---

[5] In his brief supporting his motion to dismiss, Bellinghausen states his name is Gary not Greg Bellinghausen. Carroll Police Dep't & Bellinghausen's Br. Mot. Dismiss 1, ECF No. 21-1.

harassment charges. *Id.* ¶¶ 53–54. Notices at the Bruce home stated law enforcement officers were required to produce official identification and state their purpose. *Id.* ¶ 55. The notices stated if a law enforcement officer did not provide this information, "they would be contracting with [Christopher Bruce] to pay a land use fee at a rate of $10,000 per person, per day, or any portion of that day." *Id.*

The officers did not have a warrant at the time they approached the house, *id.* ¶ 54, but returned 20 minutes later with a warrant. *Id.* ¶ 56. The officers arrested Christopher Bruce on the warrant for harassment of Tromblay and transported him to the Polk County Jail. *Id.* Plaintiffs allege the warrant to arrest him was not valid. *Id.* ¶ 59.

Prior to the January 23rd arrest, Christopher Bruce noticed his emails to Defendant Polk County Attorney John P. Sarcone were opened by others in different cities. *Id.* ¶ 60. Plaintiffs allege Sarcone was deliberately forwarding the emails to other law enforcement agencies "in an attempt to have [Christopher Bruce] investigated or federally arrested, for no crime committed." *Id.*

Christopher Bruce continued to post stories on his blog regarding his views of the Department of Human Services in Iowa and around the country. *Id.* ¶¶ 61–62. He sent an email to 8000 social workers who worked in Los Angeles County, California, "to let them know that their crimes against Theodore Booker were online for the world to see." *Id.* ¶ 61. Plaintiffs describe Booker as "a fellow warrior against child trafficking." *Id.*

Christopher Bruce was released and arrested again several days later. *Id.* ¶ 63. The new charges were based on alleged harassment of Jeanne Munson of Altoona, Iowa, by Christopher Bruce. *Id.*; *see also State v. Bruce*, AGCR292141 (Iowa Dist. Ct. Polk Cty. Jan. 19, 2016). Plaintiffs allege the arrest "most certainly occurred because of what had happened with the DCFS offices in Los Angeles, as well as what had already occurred in [Christopher Bruce]'s newly

formed war with his local DHS office in Carroll, Iowa." ECF No. 5 ¶ 63. Plaintiffs allege Munson's grandchildren had been removed from her care, and Munson had become the administrator for a group protesting the actions of the Department of Human Services in Iowa. *Id.* Plaintiffs allege Department of Human Services Director Charles Palmer had "made a deal" with Munson, "offering her and others to once again be allowed to visit with their children and grandchildren" in exchange for Munson and others turning against Christopher Bruce. *Id.*

As Christopher Bruce was being transported to the Polk County Jail, two additional police reports were generated from Defendant Altoona Police Department. *Id.* ¶ 64. These reports resulted in additional charges against Christopher Bruce for stalking and for threats. *See State v. Bruce*, FECR292312 (Iowa Dist. Ct. Polk Cty. Jan. 26, 2016). As a result, Christopher Bruce's bond increased from $200 to $70,000, which Plaintiffs allege was excessive. ECF No. 5 ¶ 64. Plaintiffs allege "[t]his arrest, then, only occurred as all involved and afore-mentioned, conspired against [Christopher Bruce] and, considering how he managed to bail out easily for the prior arrest, something more drastic had to be done to insure it didn't happen this time." *Id.*

On January 27, 2016, Defendant Judge Carol Egly presided over the initial appearance of Christopher Bruce related to the charges of harassment of Tromblay. *Id.* ¶ 65. Plaintiffs allege Judge Egly had no jurisdiction over Christopher Bruce. *Id.* Plaintiffs allege Judge Egly misplaced Christopher Bruce's motion for a jury trial, and set the case for a nonjury trial. *Id.* ¶66; *see also* Order Setting Nonjury Trial, *Bruce*, SMAC359086 (Feb. 9, 2016). Plaintiffs further allege that Defendant Assistant Polk County Attorney Linda Lane was "in charge of all the cases following [Christopher Bruce]'s initial 2016 arrest." *Id.* ¶ 66.

The Tromblay charges were tried as a nonjury case on March 3, 2016, before Defendant Magistrate Anastasia Hurn. ECF No. 5 ¶ 68. Magistrate Hurn found Christopher Bruce guilty of

harassing Tromblay and Pitts. *Id.* Plaintiffs allege this conviction was based on false information. *Id.* Plaintiffs allege Tromblay conspired with Sarcone "to have [Christopher Bruce] arrested" if Christopher Bruce insisted that Tromblay publish the story. *Id.*

Plaintiffs allege

[a] meeting of the minds occurred between the report filer (Darren Tromblay), the county attorney's office (Assistant Polk County attorney Linda Lane . . . was someone who prosecuted and also presented as the party to the case in EVERY CRIMINAL CASE [Christopher Bruce] INCURRED, from this case until her promotion, three in all, from January until December of 2016, using quite a variety of simple and aggravated misdemeanors and felony charges, over eight in all in a one year period), Judge Price, Judge William Kelly, Judge Egly, Magistrate Hurn, to conspire against, withhold and deny the plaintiff each and every civil and due process right available, in just what has been stated so far.

*Id.* ¶ 69.

Meanwhile, the charges against Christopher Bruce based on his harassment of Munson were consolidated with the charges against him for stalking and threats to Munson. *See* Trial Information, *Bruce*, FECR292312 (Feb. 4, 2016). After a hearing held February 29, 2016, Defendant Judge William Kelly denied Christopher Bruce's request to represent himself. Order, *id.* (Feb. 29, 2016).

Trial on the Munson-related charges began April 11, 2016, and was presided over by Defendant Judge Robert J. Blink. ECF No. 5 ¶ 73. Defendant Lucas Taylor represented Christopher Bruce in the capacity of stand-by counsel in the criminal proceedings. *Id.* ¶ 70. Plaintiffs allege Taylor's representation was deficient. *Id.* ¶¶ 70, 72–73. A jury convicted Christopher Bruce of stalking and harassment, and the court sentenced Christopher Bruce to concurrent sentences of 181 days in jail, with credit for 52 days served on each. Sentencing Order, *Bruce*, FECR292312 (May 4, 2016).

Plaintiffs allege the convictions were tainted by a libelous story in the Des Moines Register that affected the jury verdict. *Id.* ¶ 73. Plaintiffs also allege that during his jail stay, Christopher Bruce was denied the ability to speak freely with his wife or counsel. *Id.* ¶ 75.

Plaintiffs allege Christopher Bruce was never properly advised about how to register for probation, the conditions of probation, and the length of probation. *Id.* ¶¶ 76–80.

After Christopher Bruce was released from custody, he went to the Polk County Courthouse to register for probation. *Id.* ¶ 79. When he learned he had to pay $300 and would have to be in Ames, Iowa, he asked for reconsideration of the terms of his probation. *Id.* On July 24, 2016, the Ames Probation Office filed a notice that Christopher Bruce had not appeared at the assigned appointment, and was in violation of his probation. *Id.* ¶ 80. Judge Blink issued a warrant for Christopher Bruce's arrest on July 25, 2016. *Id.*

On August 16, 2017, Christopher Bruce was arrested for harassment of an officer, disorderly conduct, and for calling 911 without an emergency. *Id.* ¶82; *see also* Crim. Compl. *State v. Bruce*, SMAC363417 (Iowa Dist. Ct. Polk Cty. Aug. 17, 2016). Christopher Bruce appeared before Judge Price, who set cash bail of $500 per charge on the three misdemeanor charges.

ECF No. 5 ¶ 82. Assistant County Attorney Lane offered to drop all charges, but Christopher Bruce wanted to proceed to a jury trial "because he felt that the arrest and the charges that resulted were ridiculous and unlawful, and asked for a jury trial." *Id.* ¶ 83.

A jury found Christopher Bruce guilty of disorderly conduct and filing a false 911 report. Sentencing Order, *Bruce*, SMAC363417 (Sept. 29, 2016). Judge Robert Hanson sentenced Christopher Bruce to 30 days in the Polk County Jail; Christopher Bruce was given credit for 30 days already served. *Id.*

Christopher Bruce filed a postconviction relief application, although it is unclear which conviction he challenged. ECF No. 5 ¶ 84. Defendant Assistant Polk County Attorney Jesse Ramirez represented the state, and Defendant Judge Jeanie Vaudt presided over the action. *Id.* ¶ 88. Plaintiffs allege the postconviction relief proceedings were biased. *Id.* ¶¶ 88–92. Judge Vaudt denied the application for postconviction relief on October 7, 2017. *Id.* ¶ 93. Christopher Bruce did not appeal. *Id.* ¶ 94.

Plaintiffs ask the Court for (1) restoration of Elizabeth Bruce's parental rights and return of T.B. to her custody; (2) punitive damages for mental anguish, malicious prosecution, libel, slander, false imprisonment, fraud, pain and suffering, and defamation; (3) Christopher Bruce's criminal records to be expunged; (4) a finding that the Carroll Police Department is in breach of contract; (5) injunctive relief to keep Sarcone and his office from terrorizing Plaintiffs; and (6) charges against Sarcone and for his resignation. *Id.* at 48–49.

## III.    Motions to Dismiss

### A.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

A pro se complaint in a proceeding without prepayment of fees must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The Court must weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *See Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (determination of what is "clearly baseless" is

left to discretion of court ruling on in forma pauperis petition). While Federal Rule of Civil Procedure 8(a)(2) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678–79 (citations omitted).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). A complaint states a plausible claim for relief when its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

## B.     Plaintiffs' Motion to Voluntarily Dismiss

Although Plaintiffs originally resisted all of the motions to dismiss, they now have moved to voluntarily dismiss many of the defendants. *See* Pls.' Notice Dismissal, ECF No. 53 (errata 61) (voluntarily dismissing Polk County Attorney's Office and all assistant county attorneys, all state employees and judicial officials, Altoona and Carroll Police Departments, and Lancaster); *see also* Pls.' Notice Dismissal 1, ECF No. 47 (voluntarily dismissing Altoona and Carroll Police Departments); Pls.' Notice Dismissal, ECF No. 48 (voluntarily dismissing claims against defendants who work in Polk County Courthouse, the Department of Human Services, and the Iowa Attorney General's Office).

It appears Plaintiffs seek to dismiss these defendants pursuant to Federal Rule of Civil Procedure 41. Under this rule, "the plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i). All of the Defendants that Plaintiffs seek to voluntarily dismiss have filed motions to dismiss.[6] "Because a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is neither an answer nor a motion for summary judgment, its filing generally does not cut off a plaintiff's right to dismiss by notice." *In re Bath & Kitchen Fixtures Antitrust Litig.*, 535 F.3d 161, 166 (3d Cir. 2008); *see also Safeguard Bus. Sys., Inc. v. Hoeffel*, 907 F.2d 861, 863 (8th Cir. 1990) (construing Rule 41 strictly so that plaintiff does not lose right to voluntarily dismiss unless defendant has filed either answer or motion for summary judgment).

If a plaintiff files a notice of voluntary dismissal and the defendants have not yet filed an answer or motion for summary judgment, the district court lacks jurisdiction over the merits of the case. *Foss v. Fed. Intermediate Credit Bank of St. Paul*, 808 F.2d 657, 660 (8th Cir. 1986). "Rule 41(a)(1) cases require no judicial approval or review as a prerequisite to dismissal; in fact, the dismissal is effective upon filing, with no court action required. Fed. R. Civ. P. 41(a)(1). The reason for the dismissal is irrelevant under Rule 41(a)(1)." *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1080 (8th Cir. 2017).

Plaintiffs have articulated their intention to dismiss these defendants only to file a new suit later. *See* ECF No. 47 at 1 (requesting dismissal against Altoona and Carroll Police Departments and stating intent to refile suit "within the month"); ECF No. 48 (asking the Court to dismiss all

---

[6] *See* ECF Nos. 47, 48, 61 (voluntarily dismissing Defendants Polk County Attorney's Office, Ramirez, Brown, Brownell, Bell, Lane, Iowa Department of Human Services, Gosch, Rhinehart, Nieman, Iowa Attorney General's Office, Dugdale, Miller-Todd, Lancaster, White, Altoona Police Department, Carroll Police Department, Price, Kelly, Blink, Egly, Vaudt, and Hurn); *see also* Gosch, Rhinehart, Nieman, Dugdale, & Miller-Todd's Mot. Dismiss, ECF No. 7; Polk Cty. Atty.'s Office, et al.'s Mot. Dismiss, ECF No. 9; Price, Kelly, Blink, Egly, Vaudt, Hurn, & White's Mot. Dismiss, ECF No. 15; Altoona Police Dep't's Mot. Dismiss, ECF No. 20; Carroll Police Dep't & Bellinghausen's Mot. Dismiss, ECF No. 21; Des Moines Police Dep't & Lancaster's Mot. Dismiss, ECF No. 27.

defendants from Polk County Courthouse, Department of Human Services, and Iowa Attorney General's Office and "claimants will file a new suit, naming these claimants (sic) individually, and post haste."). In fact, Plaintiffs have already filed their new action. *See* Compl., *Bruce v. Price*, 4:18-cv-00223-RGE-CFB (S.D. Iowa July 10, 2018), ECF 1. Nonetheless, it is their right to voluntarily dismiss the claims against these defendants at this juncture in the proceedings.

For these reasons, the Court accepts the voluntary dismissal of Defendants Polk County Attorney's Office, Ramirez, Brown, Brownell, Bell, Lane, Iowa Department of Human Services, Gosch, Rhinehart, Nieman, Iowa Attorney General's Office, Dugdale, Miller-Todd, Lancaster, White, Altoona Police Department, Carroll Police Department, Price, Kelly, Blink, Egly, Vaudt, and Hurn. *See* ECF Nos. 47, 48, 61.

### C. Motions to Dismiss by Remaining Defendants

#### 1. Polk County Attorney John Sarcone

Defendant Sarcone filed a motion to dismiss. ECF No. 9.

##### a. Immunity

"Prosecutors are absolutely immune from suits for damages arising out of their official duties in initiating and pursuing criminal prosecutions." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013) (quoting *Williams v. Hartje*, 827 F.2d 1203, 1208 (8th Cir. 1987) (further citations omitted). The immunity does not extend to functions outside the role of advocate, but does apply to "actions taken to initiate a prosecution, 'even if those actions are patently improper.'" *Id.* (quoting *Williams*, 827 F.2d at 1208). Insofar as Sarcone was acting in his capacity as a prosecutor and not an administrator, he is immune from Plaintiffs' claims.

##### b. Conspiracy

In general, Plaintiffs allege the Iowa Department of Human Services employees conspired with the attorney of T.B.'s biological father as well as with "Judge Price, the DHS, and all at the

county attorney's offices to make sure T.B. went somewhere, ANYWHERE . . . and to ANYONE, as long as no one gave her back to [Plaintiffs]." ECF No. 5 ¶ 44. Sarcone, as the Polk County Attorney, falls within Plaintiffs' allegation that "all at the county attorney's office" have conspired with other defendants to keep T.B. away from them. *Id.* Plaintiffs assert "[i]t should not be difficult for this court to find that a most definitive meeting of the minds and conspiracy occurred between all that have been mentioned thus far in the Claim, as defendants." *Id.* ¶ 52. They contend they have "shown, without a doubt, that a meeting of the minds occurred" between the newspaper reporter, the county attorney's office, "Judge Price, Judge William Kelly, Judge Egly, Magistrate Hurn, to conspire against, withhold and deny the plaintiff each and every civil and due process right available in just what has been stated so far." *Id.* ¶ 69. Plaintiffs allege law enforcement and human services agencies conspired with others to bring criminal charges against Christopher Bruce. *Id.* ¶ 63 (conspiring with Munson); *id.* ¶ 69 (conspiring with Tromblay); *id.* ¶ 74 ("conspirators named in this action instructed the Altoona Police Department" to file false charges).

Plaintiffs' allegations of jurisdiction references both § 1983 and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, *see* ECF No. 5 at 2, and therefore, the Court will consider the claims under both.[7]

---

[7] In their resistance to the motion to dismiss, Plaintiffs recite additional facts outside the current record. *See generally* Pls.' Br. Resp. Polk Cty. Atty.'s Office, et al.'s Mot. Dismiss, ECF No. 31-1. The Court may not consider matters outside the pleadings in deciding a Rule 12 motion to dismiss, unless the "documents necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citation omitted). Insofar as Plaintiffs seek to amend their complaint, they must adhere to the rules regarding amending and supplementing pleadings. *See* Fed. R. Civ. P. 15 (Amended and Supplemental Pleadings). Plaintiffs have not sought leave to amend their complaint, and the Court will not consider this new information.

1.      **Racketeer Influence and Corrupt Organizations Act**

Throughout the complaint, Plaintiffs allege these defendants conspired together and with others in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961. *See generally* ECF No. 5. In cases alleging fraud, a plaintiff is subject to the heightened pleading standards. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also H & Q Props. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2015) (recognizing heightened pleading standard of Rule 9(b) applies to RICO actions).

RICO was enacted as a means to combat organized crime in the United States. *United States v. Turkette*, 452 U.S. 576, 589 (1981). RICO states, in relevant part:

> (c)      It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d)      It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c)–(d). To bring a claim under § 1962(c), Plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Section 1962(d) also creates a claim for conspiracy to violate the substantive RICO prohibitions.

To prove "racketeering activity," a plaintiff must prove a defendant committed a predicate offense enumerated in 18 U.S.C. § 1961(1). Amongst the list of racketeering activities are "predicate acts, including certain state law crimes, conduct that is indictable under various federal provisions, and numerous other offenses." *Gallagher v. Magner*, 619 F.3d 823, 841 (8th Cir. 2010).

The predicate offenses include mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343), among others. 18 U.S.C. § 1961(1).

To prove a "pattern of racketeering activity" a plaintiff must prove "at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The party also must show: (1) "the racketeering predicates are related" and (2) these predicates either "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Plaintiffs use the word "conspiracy" to describe the actions of defendants. ECF No. 5 ¶ 44 ("[t]he claimants also claim that ALL, that had been involved thus far, and even [T.B.'s biological father]'s attorney, conspired with Judge Price, the DHS, and all at the county attorney's offices to make sure T.B. went somewhere, ANYWHERE . . . and to ANYONE, as long as no one gave her back" to Christopher Bruce and Elizabeth Bruce.). Plaintiffs describe the common purpose of the conspiracy is to deprive them of their parental rights. *See generally* ECF No. 5. They allege everyone who had any involvement in the parental termination proceedings participated in this conspiracy to terminate Plaintiffs' parental rights. Likewise, everyone, from the witnesses to the judges in the criminal proceedings, were part of the same conspiracy.

Plaintiffs, however, have failed to allege what is critical to any racketeering claim: any predicate criminal act upon which to base a RICO conspiracy. Plaintiffs identify no particular act of mail fraud, wire fraud, or other predicate act found in § 1961 used to bring about the conspiracy. Instead, Plaintiffs use the words "conspiracy," and "meeting of the minds" broadly to describe what happened to them but "without more, such phrases are insufficient to form the basis of a RICO claim." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 356 (8th Cir. 2011).

Never do Plaintiffs specifically allege Sarcone or any other defendant used the mail or wires for purposes of defrauding Plaintiffs. This failure to adequately allege any mail fraud, wire fraud, or other predicate crime defeats the racketeering claim in its entirety, and it is therefore not necessary to consider any of the other requirements under the statute. *See Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1028 (8th Cir. 2008) ("Failure to present sufficient evidence on any one element of a RICO claim means the entire claim fails.").

### 2.     Section 1983 Civil Conspiracy

Plaintiffs may also be attempting to allege civil conspiracy under Section 1983. "To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). Proof of deprivation of a constitutional right or privilege is also required. *Id.*

As with the claims for civil racketeering, Plaintiffs' allegations are very broad. They allege Sarcone conspired with others but they do not identify any specific person who met with Sarcone, nor do they allege facts which would identify an overt act to further the conspiracy. "A conspiracy claim requires evidence of specific facts that show a 'meeting of the minds' among conspirators." *Crutcher-Sanchez v. Cty, of Dakota*, 687 F.3d 979, 987 (8th Cir. 2012) (quoting *Barstad v. Murray Cty.*, 420 F.3d 880, 887 (8th Cir. 2005)). Plaintiffs allege Sarcone conspired with others to bring criminal charges against Christopher Bruce, but such action would be within the course and scope of his duties as County Attorney. "A plaintiff who pleads only that the government actor 'acted in the course and scope of "[his] employment" fail[s] to demonstrate the existence of a conspiracy.'" *Id.* (alternations in original) (quoting *Barstad*, 420 F.3d at 887).

Plaintiffs allege they cannot be more specific about details of the conspiracy because they "didn't get to attend all the little meetings these people held, where they conspired against me and my rights. . . . I just know it's done." ECF No. 31-1 ¶ 4. As stated previously, claims based on allegations of fraud "must be alleged with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure." *Romine v. Acxiom Corp.*, 296 F.3d 701, 704 (8th Cir. 2002). Given the heightened pleading requirements of conspiracy under § 1983, these general accusations of conspiracy fail to state a § 1983 claim of conspiracy against Sarcone.

### c.    Criminal Charges

Plaintiffs assert this Court has jurisdiction over all defendants pursuant to 18 U.S.C. § 241. ECF No. 5. at 2 (alleging "[c]onspiracy against our unalienable and civil rights"). Plaintiffs allege the actions of the Polk County Attorney are criminal, and the Court should insist upon Sarcone's resignation and the filing of criminal charges against him. ECF No. 5 at 49.

Under § 241, "[i]t is a crime for 'two or more persons [to] conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States.'" *United States v. Blakeney*, 876 F.3d 1126, 1131 (8th Cir. 2017) (second alternation in original) (quoting 18 U.S.C. § 241).

Private citizens lack standing to seek criminal charges against an individual. *Parkhurst v. Tabor*, 569 F.3d 861, 867 (8th Cir. 2009) (holding decision to prosecute and what charge to file "are decisions that generally rest in the prosecutor's discretion."); *see also United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.").

The Court denies the request for criminal charges to be brought against Sarcone or any other defendants.

#### d. Injunctive Relief

Plaintiffs also ask the Court to stop Sarcone from harassing them. Plaintiffs allege Sarcone was sharing information about Christopher Bruce with other law enforcement officials across the country. ECF No. 5 ¶ 60; Pls.' Mot. Injunctive Relief, ECF No. 52. Plaintiffs allege they have a computer program which tracks email, showing the date, time, geographic location, and person who opens each email sent by Christopher Bruce. *Id.* Plaintiffs allege Sarcone forwarded Christopher Bruce's emails in an attempt to have Christopher Bruce investigated and arrested. *Id.*

Plaintiffs allege the forwarding of this email is harassing and malicious, and ask the Court to grant injunctive relief that would "keep John P. Sarcone and his offices from terrorizing the claimant, by calling the offices of the FBI all over the country in an attempt to have him investigated and arrested." *Id.* at 49. Plaintiffs do not articulate how such alleged actions, if true, violate any particular constitutional right. Even if the emails are forwarded to others, the emails themselves are written by Christopher Bruce who controls the content of the message.

Regardless, this request for injunctive relief only seeks to keep Sarcone from acting unlawfully. "[A]n injunction which does little or nothing more than order the defendants to obey the law is not specific enough." *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016) (quoting *Daniels v. Woodbury County*, 742 F.2d 1128, 1134 (8th Cir. 1984)). Plaintiffs' request for injunctive relief against Sarcone, ECF No. 52, is denied.

#### e. Statute of Limitations

While 42 U.S.C. § 1983 does not have an explicit statute of limitations, the Supreme Court has held "that the state statute of limitations for personal injury torts was the appropriate period of limitations of all § 1983 cases." *DeVries v. Driesen*, 766 F.3d 922, 923 (8th Cir. 2014) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). The Iowa Code provides a limitation period

of two years for personal injury claims. Iowa Code § 614.1(2). Iowa's two-year personal injury statute of limitations applies to a § 1983 action. *Wycoff v. Menke*, 773 F.2d 983, 984–85 (8th Cir. 1985).

Plaintiffs filed their original complaint on February 12, 2018. ECF No. 1. The amended complaint was filed March 19, 2018. Because the amended complaint asserts claims "that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading," and was amended only to add Taylor, the Court finds that the amendment relates back to the original complaint and uses the date of the original filing for purposes of determining timeliness of the claim. Fed. R. Civ. P. 15(c)(1) (discussing when an amendment relates back to date of original pleading). Therefore, any § 1983 claims arising more than two years prior to February 12, 2018—February 12, 2016— are barred by the statute of limitations.

Plaintiffs argue the two year statute of limitations is not applicable to them because harm continues until their parental rights are restored.[8] Pls.' Resp. Polk Cty. Atty.'s Office, et al.'s Mot. Dismiss 1, ECF No. 31. In general, "a limitations period begins to run after a claim accrues, not after an inevitable consequence of that claim." *Green v. Brennan*, 136 S. Ct. 1769, 1780 (2016) (discussing limitations period in context of employment discrimination); *see also Crawford v. Wash. Cty. Children & Youth Servs.*, 353 F. App'x 726, 729 (3d Cir. 2009) ("The 2007 complaint is an effect of the earlier obtained order terminating parental rights; however, 'a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.'").

---

[8] Plaintiffs' claim based on the civil racketeering statute is governed by a four-year statute of limitations. *Ass'n of Commonwealth Claimants v. Moylan*, 71 F.3d 1398, 1402 (8th Cir. 1995) (citing *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987)). For the reasons discussed above, the racketeering claims do not fail based on statute of limitations grounds but for lack specificity

Plaintiffs also ask to be excused from this rule because Christopher Bruce spent one year in jail related to these very events. ECF No. 49 at 2. Equitable tolling is available when circumstances beyond the control of a plaintiff cause a plaintiff to miss a filing deadline. *Hallgren v. U.S. Dep't of Energy,* 331 F.3d 588, 590 (8th Cir. 2003) (considering general principles of tolling in context of employment discrimination). Examples of equitable tolling include "when a claimant has received inadequate notice, when a motion for appointment of counsel was pending, when the court has led the plaintiff to believe that he had done everything required of him, or when affirmative misconduct on the part of the defendant has lulled the plaintiff into inaction." *Id.* None of those circumstances are present in this case, and no circumstance beyond Plaintiffs' control existed to prevent them from filing a timely lawsuit. Equitable tolling is not appropriate here.

The § 1983 claim against Sarcone which arose from events occurring prior to February 12, 2016, are barred by the statute of limitations.

### f.    Summary

For all the reasons stated above, the motion to dismiss Defendant Sarcone, ECF No. 9, is granted.

### 2.    Lucas Taylor and Dale Mays

Taylor and Mays filed separate motions to dismiss. Taylor's Mot. Dismiss, ECF No. 56; Mays's Mot. Dismiss, ECF No. 18.

Taylor was appointed as stand-by counsel in Christopher Bruce's criminal proceedings. ECF No. 5 ¶ 67. Mays was appointed to represent Elizabeth Bruce in the parental termination hearing. *Id.* ¶ 3. A public defender is not acting under color of state law when representing a criminal defendant. *Polk Cty. v. Dodson,* 454 U.S. 312, 324–25 (1981). Similar to public defenders, attorneys representing parents in termination proceeding are also not acting under color of state law. *See Bell v. Jackson,* No. C10–0376–MJP, 2011 WL 6968322, at *5

(W.D. Wash. Nov. 1, 2011) (citing *Dodson*, 454 U.S. at 325) (holding appointed defense counsel in dependency hearing not state actor because "public defenders acting in their role as advocates are not considered state actors for purposes of bringing suit under § 1983."). As these defendants were not acting under color of state law, they cannot be held liable under §1983.

Moreover, the events giving rise to the claims alleged against Mays and Lucas occurred prior to February 2016. As such, any § 1983 claims against them are barred by the applicable statute of limitations. *See Wycoff*, 773 F.2d at 984. Finally, for the same reasons discussed as related to Sarcone, Plaintiffs' have not met the heightened pleading standard for civil racketeering claims against these defendants. *See H & Q Props.*, 793 F.3d at 856 (recognizing heightened pleading standard of Rule 9(b) applies to RICO actions).

The motions to dismiss Defendant Mays, ECF No. 18, and Defendant Taylor, ECF No. 56, are granted.

### 3. Des Moines Police Department

Plaintiffs voluntarily dismiss Lancaster, *see* ECF No. 61 at 1, but do not specifically dismiss the Des Moines Police Department as a defendant. Neither do Plaintiffs affirm their intention to proceed with the suit against it. *Id.* Because they have not specified to the contrary, the Court will proceed as if the Des Moines Police Department remains a defendant. The Des Moines Police Department filed a motion to dismiss. ECF No. 27.

"Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Plaintiffs do not allege the existence of any unconstitutional policy or custom by the Des Moines Police Department nor do they allege the

department failed to train or supervise a particular officer. For this reason, the allegations fail to state a cognizable claim against the Des Moines Police Department.

Moreover, police departments generally are not considered legal entities subject to suit because "[t]hey are simply departments or subdivisions of the City government." *Ketchum v. W. Memphis*, 974 F.2d 81, 82 (8th Cir. 1992); *see also El-Alamin v. Radke*, 369 F. App'x 770, 771 (8th Cir. 2010) (per curiam) (finding Minneapolis Police Department not suable entity and no showing plaintiff suffered injury caused by unconstitutional policy or custom as required under *Monell*); *Nibeck v. Marion Police Dep't*, No. 16-cv-144-LRR, 2016 WL 6246782, at *8 (N.D. Iowa Oct. 25, 2016) (finding Marion Police Department "not empowered to enforce its own rules and regulations but is, instead, delegated authority by the City of Marion to exercise the enforcement powers granted to the city by Iowa law.").

The motion to dismiss the claims against the Defendant Des Moines Police Department, ECF No. 27, is granted.

### 4.    Gary Bellinghausen

On January 23, 2016, members of the Carroll City Police Department, including Officer Bellinghausen, went to Plaintiffs' home in Carroll to arrest Christopher Bruce. ECF No. 5 ¶ 53. Posted on front and back doors of the Bruce house were signs requesting all law enforcement to produce official documentation of their identity and purpose for being there. *Id.* ¶ 55. The signs stated failure to do so would be considered a contract with Christopher Bruce to pay a land use fee of $10,000 per person per day. *Id.*

Elizabeth Bruce responded to the officers through the front door, and the officers identified themselves as the Carroll City Police. *Id.* ¶ 54. The officers were unable to produce an arrest warrant when Elizabeth Bruce requested to see one, and the officers left the property. *Id.* The

officers returned 20 minutes later with a warrant. *Id.* ¶ 56. Elizabeth Bruce was satisfied the warrant was valid, and she opened the door. *Id.*

Plaintiffs allege the warrant used to arrest Christopher Bruce was a search warrant not an arrest warrant. *Id.* ¶ 58. Plaintiffs allege Bellinghausen arrested Bruce without verifying his identity. *Id.* Plaintiffs argue therefore Bellinghausen "is wholly responsible for the debt he incurred by contracting with [the Plaintiffs] by willfully entering their home of his own volition, after being duly warned of the consequences; without invitation, and using an illegal warrant to do so." *Id.* ¶ 59.

Plaintiffs appear to be asserting a type of contract action against Bellinghausen based on the notice posted on the door. *Id.* at 48 ("The claimants pray this court find the Carroll Police Department to be in default" of the contract entered into when officers entered Plaintiffs' property on January 24, 2016); ECF No. 47 at 1–2 (asserting Bellinghausen came to the home without a warrant, and by opening the out screen door, agreed to contract).

Bellinghausen moves to dismiss the complaint, including the breach of contract claim, for failure to state a claim upon which relief can be granted. ECF No. 21 at 2.

Plaintiffs "cannot base a 42 U.S.C. § 1983 claim on alleged violations of workers' compensation laws or breach of contract." *Ferrell v. Norris*, 441 F. App'x 399, 400 n.2 (8th Cir. 2011) (unpublished) (per curiam) (internal citations omitted); *see also Taake v. County of Monroe*, 530 F.3d 538, 542 (7th Cir. 2008) (mere breaches of contract by the government do not support substantive due process claims under the Constitution); *Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002) ("[A] unit of state or local government does not violate the federal Constitution just because it violates a state or local law, including the law of contracts.").

Further, as alleged, Plaintiffs have failed to allege facts sufficient to show any contract between them and Bellinghausen existed. "Under Iowa law, a unilateral contract exists wherever an offeror makes a promise and an offeree renders some performance as acceptance." *Kartheiser v. Am. Nat'l Can Co.*, 84 F. Supp. 2d 1008, 1012 (S.D. Iowa 1999). The burden is on the party seeking recovery to prove the existence of the contract. *Id.* Plaintiffs have not alleged any facts to show Bellinghausen accepted the terms of the contract.

Finally, even if Plaintiffs state a contract claim against Bellinghausen, the Court would not exercise supplemental jurisdiction over the claim. "A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has 'dismissed all claims over which it has original jurisdiction.' The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity." *Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) and 28 U.S.C. § 1367(c)(3)). To the extent Plaintiffs are attempting to bring state law claims, the Court declines to exercise supplemental jurisdiction where no federal claims remain and Plaintiffs have an available state court forum to raise state claims.

For all of these reasons, the motion to dismiss the claim against Defendant Bellinghausen, ECF No. 21, is granted.

### 5.    Children & Families of Iowa and Ashley Cronbaugh

Cronbaugh was appointed as the visit supervisor for T.B. ECF No. 5 ¶ 3. Plaintiffs assert Cronbaugh made disparaging comments about them during the parental termination proceedings. *Id.* ¶ 21. Plaintiffs also allege Cronbaugh, Rhinehart, and Cronbaugh's supervisor accused Christopher Bruce of harassment and reported it to the Des Moines Police. *Id.* ¶ 17. Plaintiffs make no allegations of any interaction with Cronbaugh or Children & Families of Iowa after 2015.

Children & Families of Iowa and Cronbaugh move to dismiss the complaint for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). Children & Families Iowa & Cronbaugh Mot. Dismiss 1, ECF No. 25. In support of the motion, Defendants state on May 2, 2018, two envelopes containing a summons and amended complaint were received at the Children & Families of Iowa office by certified mail, one envelope addressed to Children & Families of Iowa and the other addressed to Ashley Andrews. *Id.* ¶4. Defendants assert neither were personally served and neither consented to service of process via certified mail. Children & Families Iowa & Cronbaugh Br. Mot. Dismiss 2, ECF No. 25-1; *see also* Children & Families Iowa & Cronbaugh Ex. 2, Cronbaugh Aff. ¶ 4, ECF No. 25-3; Children & Families Iowa & Cronbaugh Ex. 1, Lane Aff. ¶ 5, ECF No. 25-2 (Chief Executive Officer of Children & Families of Iowa and its registered agent).

Under Federal Rule of Civil Procedure, individual service of process is effected by following state law or by "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). A plaintiff may notify a defendant that an action has been commenced and request that the defendant waive service of a summons. Fed. R. Civ. P. 4(d)(1). "On a motion to dismiss brought under Fed. R. Civ. P. 12(b)(4), insufficiency of process, or 12(b)(5), insufficiency of service of process, the plaintiff must establish prima facie evidence that there was sufficient process and service of process." *Hahn v. Bauer*, No. 09-2220, 2010 WL 396228, at *6 (D. Minn. Jan. 27, 2010) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas*, 51 F.3d 1383, 1387 (8th Cir. 1995)).

Plaintiffs state the complaint "was delivered via certified mail with return receipt, which was signed for and accepted; and now has been answered with this motion to dismiss." Pls.' Resp. Children & Families Iowa & Cronbaugh's Mot. Dismiss 1, ECF No. 35. They have also filed copies of the certified mail return receipts for Children & Families of Iowa and Cronbaugh. Pls.' Notice Serv. Defs. 3, 18, ECF No. 39.

"[C]ertified mail return receipts do not prove effective service of process." *Dahl v. Kanawha Inv. Holding Co.*, 161 F.R.D. 673, 680 (N.D. Iowa 1995) (finding that pro se plaintiff did not prove sufficient service of process by filing copies of return receipts from certified mailings of complaint to defendants which did not indicate who signed for the mailing). Even though the receipts of the certified mail may indicate actual notice of the lawsuit, this does not relieve the Plaintiffs of the proper service of process requirements. *See id.* at 681. Plaintiffs provide no other documentation to make a prima facie showing of compliance with Federal Rule of Civil Procedure 4.

With no prima facie showing that Plaintiffs attempted to request a waiver of service from Children & Families of Iowa and Cronbaugh, s*ee* Fed. R. Civ. P. 4(d), or that these defendants were properly served under Rule 4(e), the Court lacks jurisdiction over the claim. *See Adams v. Allied Signal Gen. Aviation Avionics*, 74 F.3d 882, 885 (8th Cir. 1996) (holding where defendant was improperly served, "the district court lacked jurisdiction over that defendant whether or not it had actual notice of the lawsuit").

Where service is deficient, the Court may allow the plaintiffs an opportunity to re-serve the defendant, unless proper service would be futile. *Dahl*, 161 F.R.D. at 681. As all events related to these defendants occurred prior to February 12, 2016, any § 1983 claim is barred by the applicable statute of limitations. *See Wycoff*, 773 F.2d at 984 (holding statute of limitations for §1983 claims in Iowa is two years). Nor do Plaintiffs meet the heightened pleading standard

required by the civil racketeering statute. *See H & Q Props.*, 793 F.3d at 856 (recognizing heightened pleading standard of Rule 9(b) applies to RICO actions). As such, it would be futile to allow Plaintiffs an opportunity to re-serve these defendants.

The motion to dismiss the complaint against Defendants Children & Families of Iowa and Cronbaugh, ECF No. 25, is granted.

### 6. Anthony Reed

Plaintiffs allege Reed conducted field urine tests for the Department of Human Services when Christopher Bruce was subject to urine testing. ECF No. 5 ¶ 24. Reed collected a urine sample from Christopher Bruce for testing. *Id.* ¶ 26. Plaintiffs allege the testing was fraudulent and Defendants used the fraudulent tests to make it appear as if Plaintiffs were using drugs. *Id.* ¶¶ 25–28.

Reed has filed a motion for summary judgment. Reed's Mot. Summ. J., ECF No. 74. Plaintiffs resist the motion. Pls.' Resp. Reed's Mot. Summ. J., ECF No. 78. Among other things, Reed moves for summary judgment on the basis that the claims against him are barred by the applicable statute of limitations. ECF No. 74 ¶ 2(a).

Plaintiffs concede that none of their allegations against Reed occurred after December 2014. ECF No. 78 ¶ 6. Thus, the § 1983 claims against Reed are barred by the applicable statute of limitations. *See Wycoff*, 773 F.2d at 984 (holding statute of limitations for § 1983 claims in Iowa is two years). Nor do Plaintiffs allege sufficient facts against Reed to meet the heightened pleading standard required by the civil racketeering statute. *See H & Q Props.*, 793 F.3d at 856 (recognizing heightened pleading standard of Rule 9(b) applies to RICO actions).

Defendant Reed's motion for summary judgment, ECF No. 74, is granted.

IV.     **Miscellaneous Relief Requested by Plaintiffs**

A.     **Restoration of Parental Rights**

Plaintiffs asks the Court to restore Elizabeth Bruce's parental rights, or at least grant visitation with her daughter. ECF No. 5 at 48. In so doing, Plaintiffs are asking this Court to review the state court ruling which terminated Elizabeth Bruce's parental rights, and did not recognize the parental rights of Christopher Bruce.

Even when such a challenge alleges federal constitutional violations, "federal district courts . . . may not 'exercis[e] jurisdiction over general constitutional claims that are "inextricably intertwined" with specific claims already adjudicated in state court.'" *Ballinger v. Culotta*, 322 F.3d 546, 548–49 (8th Cir. 2003) (alteration in original) (quoting *Lemonds v. St. Louis Cty.*, 222 F.3d 488, 492–93 (8th Cir. 2000). This is because "[f]ederal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court." *Id.* (alteration in original) (quoting *Lemonds*, 222 F.3d at 492); *see also Ankenbrandt v. Richards*, 504 U.S. 689, 701–02 (1992) (child custody claims, as the subject of domestic relations, are for state courts to review); *Amerson v. Iowa*, 94 F.3d 510, 512 (8th Cir. 1996) ("Because the state courts have terminated [Amerson's] parental rights, redress for this alleged interference cannot be granted without first disturbing the state court adjudication terminating her parental rights, a matter of substantial public concern."). Except for habeas corpus review, federal courts generally do not have subject matter jurisdiction to review state court cases complaining of injuries caused by state-court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

To the extent Plaintiffs are attempting to overturn the parental termination judgment, this Court lacks jurisdiction to restore the parental rights of Elizabeth Bruce or assign parental rights

to Christopher Bruce because the claim is "inextricably intertwined" with the parental rights adjudicated in state court. This request for relief is denied.

### B.    Motion for Evidentiary Hearing

Plaintiffs request an evidentiary hearing as provided for under 40 C.F.R. § 78.14. Pls.' Mot. Evid. Hr'g, ECF No. 64. Plaintiffs are citing to evidentiary hearing procedures under the Environmental Protection Act which has no application to the proceedings here. The motion for evidentiary hearing is denied.

### C.    Motion for Default Judgment Against Katherine Walker

Walker[9] represented T.B.'s biological father in the termination proceedings. *See* ECF No. 5 ¶ 37. Walker has not filed an answer in the case before this Court. Plaintiffs assert Walker is now in default for failing to file a responsive pleading and move for a default judgment under Federal Rule of Civil Procedure 55. Pls.' Mot. Default J., ECF No. 66.

Like discussed in regards to service of Children & Families of Iowa and Cronbaugh, the only showing of service is the copy of the certified mail return receipt for Walker. ECF No. 39 at 5. As stated previously, "certified mail return receipts do not prove effective service of process." *Dahl*, 161 F.R.D. at 680 (finding that pro se plaintiff did not prove sufficient service of process by filing copies of return receipts from certified mailings of complaint to defendants which did not indicate who signed for the mailing).

A motion for default judgment may be granted only where a party has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). "If the party against whom a default judgment is sought has incurred no obligation under the Federal Rules of Civil Procedure to 'plead or otherwise

---

[9] Plaintiffs name "Beth Walker, Attorney" in the caption but no further allegations are made against Beth Walker. Plaintiffs do refer to Katherine Walker in the substance of the complaint. ECF No. 5 ¶ 37. The Court considers Beth and Katherine Walker to be the same person.

defend' the action, the district court does not abuse its discretion in refusing to grant such relief." *Norsyn, Inc. v. Desai*, 351 F.3d 825, 828 (8th Cir. 2003).

Because Plaintiffs have not demonstrated proper service on Walker, they are not entitled to default judgment. The motion for default judgment, ECF No. 66, is denied.

Nor do the allegations against Walker state any viable claim. Representing the biological father of T.B. in child custody matters does not violate any constitutional protections of the Plaintiffs. *See Bell*, 2011 WL 6968322 at *5 (appointed defense counsel in dependency hearing not state actor because "public defenders acting in their role as advocates are not considered state actors for purposes of bringing suit under § 1983"). And all allegations against Walker arise from events prior to February 2016, barring all § 1983 claims against her. *See Wycoff*, 773 F.2d at 984. Finally, Plaintiffs' conspiracy claims fail to state a claim as they lack sufficient specificity. *See H & Q Props.*, 793 F3d at 856 (recognizing heightened pleading standard of Rule 9(b) applies to RICO actions).

The claims against Walker are dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (when party is proceeding in forma pauperis, "the court shall dismiss the case at any time" if the court determines the action "fails to state a claim on which relief may be granted").

### D.     State Law Claims

Plaintiffs request punitive damages "for nearly four years worth of mental anguish, malicious prosecution, libel, slander, false imprisonment, and . . . defamation." ECF No. 5 at 48; *see also* Pls.' Letter, ECF No. 51 (demanding from each defendant "$50,000 for "mental anguish, emotional and mental distress for a period of 4 years, libel, slander and defamation; and for stealing and kidnapping our daughter").

In this assertion, Plaintiffs do not specify what specific statements were defamatory, who made the statements, or to whom the statements were made. As alleged, it is too vague to state a

claim of state law slander. *See Freeman v. Bechtel Constr. Co.*, 87 F.3d 1029, 1031–32 (8th Cir. 1996) (finding allegations of libel and slander failed to state cognizable claim because plaintiffs "do not identify the defamatory statements with any specificity, they do not identify the manner of oral publication, and they do not allege that Bechtel (that is, a Bechtel agent acting within the scope of that agency) published the statements to a nonprivileged recipient").

Further, to the extent this allegation attempts to raise state law claims other than defamation, the claims will be dismissed. "A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity." *Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016) (citations and quotation marks omitted). The claims described here arise from state not federal law. The Court declines to exercise supplemental jurisdiction over these state law claims where no federal claims remain.

### E.      Expungement

Christopher Bruce also asks the Court "to order that his record be expunged of all charges over the period of the last 3 years, including any record of arrests, charges or convictions." ECF No. 5 at 48. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). For this reason, Christopher Bruce may not seek expungement of his state criminal record in this § 1983 action.

## V.     Request to Amend

Plaintiffs ask to be allowed to amend their complaint if the Court finds any of their claims deficient. ECF No. 31 at 4 ("If a cause is needed to seek relief, if it would please the court to direct the plaintiffs in how to properly state a claim.").

Pro se complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also In re Steward*, 828 F.3d 672, 682 (8th Cir. 2016) ("[P]ro se pleadings are to be construed more liberally than those prepared by counsel."). Amendments to the complaint here would not overcome the statute of limitations or immunity bar. Plaintiffs have amended their complaint once and still were unable to plead with sufficient specificity any claim under 18 U.S.C. § 1961. Plaintiffs do not explain how they would otherwise amend their complaint to overcome the present deficiencies. The Court denies Plaintiffs the opportunity to amend this complaint.

## VI.     CONCLUSION

Plaintiffs voluntarily dismiss Defendants Polk County Attorney's Office, Jesse Ramirez, Stephanie Brown, Kevin Brownell, Kevin Bell, Linda Lane, Iowa Department of Human Services, Katie Gosch, Stephanie Rhinehart, Emily Nieman, Iowa Attorney General's Office, Grant Dugdale, Katherine Miller-Todd, Jake Lancaster, Paul White, Altoona Police Department, Carroll Police Department, Judge William Price, Judge William Kelly, Judge Robert Blink, Judge Carol Egly, Judge Jeanie Vaudt, and Judge Anastasia Hurn. ECF No. 53 (errata ECF No. 61).

IT IS ORDERED that Defendants' Motions to Dismiss, ECF Nos. 7, 15, and 20, are DENIED as moot.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss, ECF No. 9, as to Defendant John Sarcone is GRANTED, and as to Polk County Attorney's Office, Jesse Ramirez, Stephanie Brown, Kevin Brownell, Kevin Bell and Linda Lane is DENIED as moot.

IT IS FURTHER ORDERED that Defendant Dale Mays's Motion to Dismiss, ECF No. 18, is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss, ECF No. 21, as to Defendant Gary Bellinghausen is GRANTED, and as to Defendant Carroll Police Department is DENIED as moot.

IT IS FURTHER ORDERED that the Motion to Dismiss Defendants Children & Families of Iowa and Ashley Cronbaugh, ECF No. 25, is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss, ECF No. 27, as to Defendant Jake Lancaster is GRANTED, and as to Defendant Des Moines Police Department is DENIED as moot.

IT IS FURTHER ORDERED that Plaintiffs' motion for $20,000, ECF No. 47, is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Permanent Injunction, ECF No. 52 (errata ECF No. 61), is DENIED.

IT IS FURTHER ORDERED that Defendant Lucas Taylor's Motion to Dismiss, ECF No. 56, is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Evidentiary Hearing, ECF No. 64, is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Default Judgment, ECF No. 66 (errata ECF No. 67), is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Demand for the Court to Take Action, ECF No. 69 (errata ECF No. 70), is DENIED as moot.

IT IS FURTHER ORDERED that the claims against Defendant Beth Walker are DISMISSED.

IT IS FURTHER ORDERED that Defendant Anthony Reed's Motion for Summary

Judgment, ECF No. 74, is GRANTED.

**IT IS SO ORDERED.**

Dated this 21st day of September, 2018.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE